UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BAYOU FLEET PARTNERSHIP, L.L.P.                CIVIL ACTION

VERSUS                                         NO. 10-1557

ST. CHARLES PARISH                             SECTION "B"(3)

ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss (Rec. Doc. No. 6), Plaintiff's opposition (Rec. Doc. No. 7), and Defendant's reply (Rec. Doc. No. 12).

For the following reasons, Defendant's Motion to Dismiss (Rec. Doc. No. 6) is **GRANTED IN PART** and **DENIED IN PART.**

Plaintiff owns four tracts of Mississippi River batture property located on the right descending bank of the Mississippi River in St. Charles Parish. (Rec. Doc. No. 1 p. 2 ¶ 5)  Before St. Charles Parish ("the Parish") adopted its Comprehensive Zoning Ordinance ("Ordinance"), Plaintiff's batture property had been used for several industrial activities, including sand pit extraction. (Rec. Doc. No. 1 p. 3 ¶ 16)  With the adoption of the Ordinance, all of Plaintiff's tracts were zoned B-1 (a non-industrial batture district), and the previous industrial uses of Plaintiff's property became classified as non-conforming uses.  (Rec. Doc. No. 1 p. 3 ¶ 17).

The Ordinance also established a B-2 zoning classification for batture property. (Rec. Doc. No. 1 p. 3 § 18)  The B-2 zoning

1

classification only prohibited batture property from being used for medical waste storage, treatment, or disposal facilities. (Rec. Doc. No. 1 p. 4 § 20) According to the Complaint, the owners of two tracts adjacent to Plaintiff's property applied to have their property rezoned from B-1 to B-2. (Rec. Doc. No. 1 p. 4 ¶¶ 21 & 25). The Parish adopted an ordinance permitting a rezoning of these two tracts in 1996 and 1999. (Rec. Doc. No. 1 pgs. 4-5 ¶¶ 24 & 28)

On April 25, 2003, Plaintiff applied to have its four tracts of batture property rezoned from B-1 to B-2. (Rec. Doc. No. 1 p. 5 ¶ 29) However, the Parish denied Plaintiff's request to rezone the property on July 21, 2003. (Rec. Doc. No. 1 p. 5 ¶ 32) Plaintiff applied again to have its property rezoned from B-1 to B-2 on May 27, 2009. (Rec. Doc. No. 1 p. 5 ¶ 33) The Parish again denied its request on July 20, 2009. (Rec. Doc. No. 1 p. 6 ¶ 36)

Plaintiff filed suit against the Parish on May 25, 2010, alleging violations of Substantive Due Process and Equal Protection pursuant to 42 U.S.C. § 1982. (Rec. Doc. No. 1) Specifically, Plaintiff argues that the Parish "arbitrarily or capriciously engaged in reverse spot zoning, by singling out the plaintiff's four tracts of batture property for different, less favorable, treatment, than the neighboring batture property." (Rec. Doc. No. 1 pgs. 6-7 ¶¶ 38 & 44) In response, Defendant filed a 12(b) Motion to Dismiss, arguing that Plaintiff's cause of action has

2

prescribed.  (Rec. Doc. No. 6)

    The Parish argues that Plaintiff's prescriptive period ended one year after its denial of Plaintiff's rezoning request on July 23, 2003. (Rec. Doc. No. 6-1 p. 4) The Parish further argues that Plaintiff may not invoke the "continuing tort" exception to defeat prescription, because the exception does not encompass "subsequent applications or attempts to 'right' the alleged wrong." (Rec. Doc. No. 12 p. 5)) Since Plaintiff filed this Complaint over six years after the Parish's initial denial of its rezoning request, the Parish argues that this action is prescribed and therefore must be dismissed.  (Rec. Doc. No. 6-1 p. 4)

    Plaintiff argues that this cause of action has not prescribed because it "involves continuing and repeated violations" of Plaintiff's constitutional rights.  (Rec. Doc. No. 7 p. 5) Plaintiff contends that "the initial violation, which is outside the limitation period, was repeated again by the Parish when it adopted the July 20, 2009 Ordinance which refused to rezone Bayou Fleet's property." (Rec. Doc. No. 7 p. 6) In addition, Plaintiff argues that "a genuine issue of material fact exists for the jury to decide on whether or not recovery may also be had as a result of the Parish's failure to rezone the property in 2003 on the basis that the violation is closely related to the 2009 violation which is not time-barred." (Rec. Doc. No. 7 p. 6)

## I. Motion to Dismiss Standard

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). " 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) (internal quotation marks omitted).  The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950.  First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*  Legal conclusions "must be supported by factual allegations." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949.

Upon identifying the well-pleaded factual allegations, courts then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.  "A claim has facial plausibility when the plaintiff pleads factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**II. Prescription**

The statute of limitations for a § 1983 claim is generally the applicable state-law period for personal-injury torts. *City of Rancho Palos Verdes, California v. Abrams*, 544 U.S. 113, 124 n. 5 (2005) (citations omitted); *See also Bourdais v. New Orleans City*, 485 F.3d 294, 298 (5th Cir. 2007) (" In § 1983 claims, the applicable statute of limitations is that which the state would apply in an analogous action in its courts."*)*. In Louisiana, the prescriptive period for delictual actions is one year. LA CIV CODE ANN ART. 3492. Once it is established that the prescriptive period has run, a plaintiff must prove that an exception to prescription applies. *Bourdais*, 485 F.3d at 298 (citation omitted); *Terrebone Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002) (citations omitted).

One such exception is the "continuing tort" doctrine, which has its roots in property damage cases. *See Crump v. Sabine River Auth.*, 98-C-2326, (La. 6/29/1999), p. 7; 737 So.2d 720, 726. Louisiana jurisprudence draws a distinction between continuous and

discontinuous causes of injury and resulting damage:

> When the operating cause of the injury is continuous,
> giving rise to successive damages, prescription begins to
> run from the day the damage was completed and the owner
> acquired, or should have acquired, knowledge of the
> damage. *See South Central Bell Telephone Co. v. Texaco,*
> *Inc.*, 418 So.2d 531 (La. 1982), and cases cited therein.
> When the operating cause of the injury is discontinuous,
> there is a multiplicity of causes of action and of
> corresponding prescriptive periods. Prescription is
> completed as to each injury, and the corresponding action
> is barred, upon the passage of one year from the day the
> owner acquired, or should have acquired, knowledge of the
> damage. See A.N. Yiannopoulos, *Predial Servitudes*, § 63
> (1982).

*Hogg v. Chevron U.S.A. Inc.,* Nos. 2009-CC-2632, 2009-CC-2635, 2010
WL 2724029 at *8 (La. July 6, 2010).

In *Crump v. Sabine River Auth.*, the Louisiana Supreme Court
clarified the distinction between continuous and discontinuous
operating causes of injury. *Crump*, 98-2326 at 7, 737 So.2d at 726.
The court explained that "[a] continuing tort is occasioned by
[continual] unlawful acts, not the continuation of the ill effects
of an original, wrongful act." *Crump*, 98-2326 at 9, 737 So.2d at
728 (citations omitted). Furthermore, "there must be a continuing
duty owed to the plaintiff and a continuing breach of that duty by
the defendant." *Crump*, 98-2326 at 10, 737 So.2d at 728 (citation
omitted). However, "the breach of the duty to right a wrong and
make the plaintiff whole simply cannot be a continuing wrong which
suspends the running of prescription, as that is the purpose of any
lawsuit and the obligation of every tortfeasor." *Crump*, 98-2326 at
10, 737 So.2d at 729 (citations omitted).

6

The court further explained that "[t]he continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of injury." *Crump*, 98-2326 at 11, 737 So.2d at 729 n. 7.[1]   Therefore, in determining whether the continuing tort doctrine applies, "[t]he inquiry is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts." *Hoggs*, 2010 WL 2724029 at *8.

The United States Fifth Circuit Court of Appeals has additionally addressed Louisiana's continuing tort doctrine, and although in the context of an employment discrimination suit, the Court's discussion is highly instructive here. *Blacher v. BASF Corp.*, 1999 WL 197152 (5th Cir. 1999).   In *Blacher*, the plaintiff alleged that her employer discriminated against her by (1) failing to promote her in 1979, 1980, and 1990; (2) consistently undercompensating her throughout her career; and (3) as a result of these acts, creating such an unpleasant work environment that she felt compelled to retire.   *Id.* at *1.   Plaintiff's claims were governed by Louisiana's one-year prescriptive period under La. Civ. Code art. 3492, which commences on the day that injury or damage is sustained.   *Id.*   The Court stated that as the plaintiff filed suit

---

[1] *See also South Central Bell Telephone*, 418 So.2d 531 (La. 1982); *Mouton v. State of Louisiana*, 525 So. 2d 1136 (La. App. 1st Cir.), *writ denied*, 526 So. 2d 1112 (1988); *Lejeune Brothers, Inc. v. Goodrich Petroleum Co., L.L.C.*, 06-1557 (La.. App. 3 Cir. 11/28/07), 981 S.2d 23, *writ denied*, 08-0298 (La. 4/4/08), 978 So.2d 327.

on May 10, 1996, an action for injury or damage sustained prior to May 10, 1995 was subject to the defense of prescription. *Id.* Plaintiff, however, argued that the entire course of her employer's conduct constituted a continuing tort, which gives rise to a single cause of action. *Id.* As the damaging effects of her employer's actions continued until the date that she retired, July 1, 1995, Plaintiff argued her claims never prescribed. *Id.*

The Court rejected Plaintiff's argument, finding that with the exception of her constructive discharge claim, all of her allegations of discrimination were rooted in separate and distinct decisions made by her employer prior to May 10, 1995 and were therefore no longer viable. *Id.* at *2. Specifically, the Court reasoned that under the continuing tort doctrine, "otherwise unactionable conduct may become tortious as a result of its 'continuous, cumulative, synergistic nature'". *Id.* (citing *Bustamento v. J.D. Tucker*, 607 So.2d 532, 542 (La. 1992)). When the doctrine applies, prescription does not commence until the last act occurs or the conduct is abated, due to the difficulty in determining the specific date of injury. *Id.* (citing *Bustamento*, 607 So.2d at 538, 542). However, the Court found that the conduct complained of by Plaintiff did not constitute a single continuing tort, but rather was a series of discrete and salient events, "each [of which] would have given rise to an immediately apparent injury, resulting in the accrual of a distinctly separate cause of action,

8

with prescription running one year from the date of each incident."
*Blacher*, 1999 WL 197152, at *2.  The fact that Plaintiff may have
felt the effects of her employer's decisions long after the date on
which each action was taken did not transform the challenged
incidents into a single continuing tort.  *Id.*

In the instant case, Plaintiff argues that its cause of action
against the Parish "involves continuing and repeated violations" of
Plaintiff's constitutional rights. (Rec. Doc. No. 7 p. 5) However,
as was the case in *Blacher*, the Parish's denials of Plaintiff's
rezoning requests were separate and distinct occurrences, which
gave rise to separate causes of action for the alleged injury that
occurred on those specific dates.  The continuing tort doctrine is
therefore inapplicable, and the prescriptive period for Plaintiff's
claims commenced once it had actual or constructive knowledge of
damage.

Plaintiff does not allege that it lacked notice of the
Parish's denial of its rezoning request on July 21, 2003 as well as
the subsequent denial on July 20, 2009.  *See* Rec. Doc. No. 1.
Plaintiff did not file suit until May 25, 2010, over six years
after the Parish's 2003 decision.  As the 2003 denial is clearly
outside of the one year prescriptive period, and Plaintiff has not
demonstrated any continuous tortious conduct on the part of the
Parish, Plaintiff's claim with regard to this action has prescribed
and must be dismissed.  However, Plaintiff's complaint is timely

9

concerning the Parish's 2009 denial of its rezoning request. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Rec. Doc. No. 6) is **GRANTED IN PART** and **DENIED IN PART**.

New Orleans, Louisiana, this 12th day of January, 2011.

_____
UNITED STATES DISTRICT JUDGE